No. 23-12847

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

RAJESH C. PATEL,

*P l a i n t i f f*

*v.*

MUKESH C. "MIKE" PATEL and RISHI M. PATEL,

*Defendant-Appellees.*

**APPELLANT'S OPENING BRIEF**

MACEY, WILENSKY & HENNINGS LLP
Frank B. Wilensky
Georgia Bar No. 758700
5500 Interstate North Parkway
Suite 435
Atlanta, GA 30328
(404) 584-1234 — Telephone
(404) 681-4355 — Facsimile
fwilensky@maceywilensky.com

*Attorneys for Appellant*
*Rajesh C. Patel*

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

**RAJESH C. PATEL,**
*Appellant,*

**v.**

**Appeal No. 23-12847**

**MUKESH C. "MIKE" PATEL**
**and RISHI M. PATEL,**
*Appellees.*

---

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, 1 hereby certify that the following

named persons are parties interested in the outcome of this case:

Patel, Rajesh — Appellant

Patel, Rishi

Patel,

Wilensky, Frank — Counsel for Appellant

B

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument is desired and requested in this case by Appellant.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........................................................................................................

STATEMENT REGARDING ORAL ARGUMENT ...........................................

TABLE OF CONTENTS ...............

TABLE OF CITATIONS ..........................................................................

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUES............................................... 2

STATEMENT OF THE CASE ...........................................................................3

    A. Introduction ................................................................................. 3

    B. Statement of Facts and Disposition of State and Bankruptcy Court Proceedings ...........................................................................................4

SUMMARY OF THE ARGUMENT ................................................................ 8

ARGUMENT ................................................................................................ 9

    A. The Automatic Stay Is An Essential Protection Of Both Debtors And Their Creditors That Appellees Procedurally Abused By Seeking Its Annulment "For Cause" Only After The Bankruptcy Court Ruled They Had Violated It. ............................................................................................ 9

    B. Appellees' Belated Request For Annulment For Cause Required The Bankruptcy Court To Effectively Rewrite The Procedural History Of Appellant's Bankruptcy Case To Retroactively Grant Jurisdiction to Courts and Proceedings They Never Had, Thus Requiring The Bankruptcy Court To Enter An Impermissible Nunc Pro Tunc Order. ......................................... 11

CONCLUSION ....................................................................................... 16

CERTIFICATE OF COMPLIANCE ........................................................... 19

CERTIFICATE OF SERVICE .............................................................19

TABLE OF CITATIONS

Cases

Acands, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252 (3d Cir. 2006)
.................................................................................. 10

Choi v. Promax Invs., LLC, 486 B.R. 541, 543 (N.D. Ga. 2012)............................. 8

Cuebas y Arredondo v. Cuebas y Anˊedondo, 223 U. S. 376, 32 S. Ct. 277, 56 L.
E d .  4 7 6  ( 1 9 1 2 )  .......................................  1 1

Glynne  v.  Wilmed  Healthcare,  699  F.3d  380  (4th
Cir.  2012)  12  In  re  Albany  Partners,  Ltd.,  749
F.2d  670  (11th  Cir.  1984)
......... 10, 14

In re Chintella, 2014 Bankr. LEXIS 3128, 2014 WL 3672882 (Bankr. N.D. Ga.
June 20,2014) ...................................................................... 9

In re Kaiser Aluminum Corp., 303 B.R. 299 (D. Del. 2003)
.......................................... 10

In re Sorelle, 2020 Bankr. LEXIS 3612 (Bankr. D. Nev. Dec. 28, 2020)
........ ...................................................................... 14

In re Telles, 2020 Bankr. LEXIS 1167 (Bankr. E.D.N.Y. Apr. 30, 2020)
.......................................................... 13, 14, 15

Laurel Valley Dev., LLC v. Parker (In re Parker), 624 B.R. 222 (Bankr. W.D. Pa.
2021)  14

Litton Loan Servicing, LP v. Rockdale Cty. an re Howard), 391 B.R. 511 (Bankr.
N.D. Ga. 2008)  .............................................................. 9

Merriman v. Fattorini (In re Merriman), 616 B.R. 381 (B.A.P. 9th Cir. 2020)
.............. 14, 15, 16

Missouri v. Jenkins, 495 U. S. 33, 110 S. Ct. 1651, 109 L. Ed. 2d 31 (1990)
............ ............... ......... ..... . 11,12

Reider v. FDIC (In re Reider), 31 F.3d 1102, 1104 (11th Cir. 1994) ..................... 8

Rohe v. Wells Fargo Bank, N.A., 988 F.3d 1256 (11th Cir. 2021)
................................................................... 12

Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano, 140 S. Ct. 696
(2020)...................................................................... 11, 12, 14, 16

Stansell v. Revolutionary Armed Forces of Columbia, 771 F.3d 713 (11th Cir.
2014) ................................................................... 12

Statutes

11 U.S.C. § 362(a)(1) ............................................. 10

11 U.S.C. § 362(x)(6) ........... 10

11 ..., ... 3, 8, 9

28 U.S.C.§ 158(a)(1) ........................ 1, 7

28 U.S.C. § 1334(a)............................................. 15

28 U.S.C. § 1334(b) ....... 15

Fed. R. Bankr. P. 7052 ........................................... 8

Fed. R. Bankr. P. 8001 ..... 1

Fed. R. Civ. P. 52 ................................................. 8

iii

## JURISDICTIONAL STATEMENT

The District Court had appellate jurisdiction over the appeal from the Bankruptcy Court of the Northern District of Georgia pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001. Venue was proper in the Northern District of Georgia as Appellant, the bankruptcy debtor, was a resident therein.

The District Court's order was entered on August 4, 2023, and Appellant filed his notice of appeal of that order on August 25, 2023. The Court of Appeals has jurisdiction over an appeal pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001. The appeal is from a final order that disposes of all parties' claims .

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in affirming the Bankruptcy Court's entering a *nunc pro tunc* order annulling the automatic stay to retroactively grant jurisdiction to a state court's judgment previously rendered void ab initio by the Appellee's stay violation.

2. Which of the two developing lines of approaches to *nunc pro tunc* orders in bankruptcy court should be followed by the courts within the Eleventh Circuit.

2

## STATEMENT OF THE CASE

### A. Introduction

This appeal arises from the District Court's affirming of the Bankruptcy Court's issuance of a *nunc pro tunc* order to retroactively annul the automatic stay, thereby rewriting the history of the case to erase Appellee's multiple stay violations in state court which were previously obviated by the stay. This came despite Appellees' notice of Appellant's bankruptcy case from its inception. Indeed, their bankruptcy counsel in this case attended the arbitration hearing and participated as a witness. Appellees' own lawyers advised that the automatic stay was in full effect as to Appellant and that they could not proceed against Appellant. Despite this knowledge, Appellees flagrantly defied the stay, obtaining an arbitration award that personally named Appellant liable then asking for and receiving judgment on that award against Appellant in DeKalb County Superior Court. At no point when taking these steps did Appellees move for relief from the stay. Once Appellant moved the Bankruptcy Court to enforce the stay, Appellees still did not ask for either stay relief or an annulment of the stay for cause under **11 U.S.C.** § 362(d)(1). Only after the Bankruptcy Court found Appellees' actions to be willful violations of the automatic stay did Appellees shift their tactics and ask to have the stay annulled for cause. This too little, too late request for annulment, made only after multiple active stay violations and the finding of such by the Bankruptcy Court, necessarily required the

Bankruptcy Court to change the history of the case retroactively in such a way as required the entry of a *nunc pro tunc* order of the type found impermissible by the United States Supreme Court.

### B. Statement of Facts and Disposition of State and Bankruptcy Court Proceedings

R. C. Patel filed petition for relief under Chapter 7 of the Bankruptcy Code on August 30, 2016. [1:22-cv-02651-SCJ Doc. 1-2, at 4; 1:16-bk-65074-LRC Doc. 398, at 4]. As codified by **11 U.S.C.** § 362, the automatic stay went into effect on the same day.

For many of the years prior to Appellant's bankruptcy filing, R. C. and his brother Mukesh C. Patel ("Mike," collectively with his son Rishi Patel, "Appellees" herein) were business partners. After coming to this country as immigrants, together they were able to build a substantial financial empire consisting of hotels and other commercial properties, banks and an insurance company. These financial holdings were severely impacted by the Great Recession of 2008-09, and amidst this economic strain the brothers drifted apart. Disputes over ownership of businesses and real property ensued. On one side were R. C. Patel, his wife Shama and their three sons, Jay, Mayur and Sonial (referred to collectively as the "Shama Parties"). On the other side were Mike Patel, his wife Hasmita (now deceased) and their children, Rishi Patel and Ayesha Patel (referred to throughout the arbitration process

as the "Hasmita Parties"). See [1 :22-cv-02651-SCJ Doc. 1-2, at 2-4; 1 :16-bk-65074-LRC Doc. 398, at 2-4].

The parties made several efforts to resolve their disputes. The first written Settlement Agreement was entered into on September 1, 2015. When the 2015 Settlement Agreement did not resolve all ownership disputes, the parties entered into a First Amendment to Release and Settlement Agreement wherein they agreed to refer any further disputes with respect to the Settlement Agreements to arbitration, naming Henry D. Fellows, Jr., as the arbitrator. [1 :22-cv-02651-SCJ Doc. 1-2, at 3-4; 1:16-bk-65074-LRC Doc. 398, at 3-4].

After R.C.'s bankruptcy case was filed on August 30, 2016, litigation was commenced by his son Jay Patel in the Gwinnett Superior Court, which was ultimately transferred to DeKalb Superior Court and referred to arbitration. The arbitrator insisted that all of the Shama Parties sign the Arbitration Agreement, and ultimately, R.C. did sign the Arbitration Agreement under threat of entry of a default award to Appellees. [1:22-cv-02651-SCJ Doc. 1-2, at 4; 1:16-bk-65074-LRC Doc. 398, at 4].

The issue of R.C.'s bankruptcy case and effect of the automatic stay was raised early in the arbitration process and well before the arbitration hearing took place. Appellees attorney Michael Boutros sent an email to the Arbitrator on March 24, 2017 stating that "the law permits the arbitration to move forward as to the other

parties, and the bankruptcy only acts as a stay to [R.C.]." [1 :22-cv-02651-S CJ Doc. 1-2, at 5; 1:16-bk-65074-LRC Doc. 398, at 5].

The arbitration hearing occurred on June 12-14, 2017. On August 1, 2017, the Arbitrator entered an award that included damages against R.C. and the other Shama Parties jointly and severally, in an amount exceeding $2,000,000. The body of the award included specific findings of fault against R.C. personally. Specifically, the award singled out R.C. as the responsible party required to convey some $5,000,000 in property to the Hasmita Parties. [1:22-cv-02651-SCJ Doc. 1-2, at 10; 1:16-bk-65074-LRC Doc. 398, at 10].

In light of this award against him personally, on August 25, 2017, R.C. filed the Motion to Enforce Stay, asserting that the award violated the Automatic Stay and seeking to recover damages, costs and fees. On October 31, 2017, R.C., along with the Shama Parties, filed a Motion in DeKalb Superior Court, to vacate the Arbitration Award, again asserting that the award violated the Automatic Stay. [1 :22-cv-02651-SO Doc. 1-2, at 12; 1:16-bk-65074-LRC Doc. 398, at 12].

Notwithstanding these Motions pending in the Bankruptcy Court and the DeKalb Superior Court, Appellees asked the Superior Court to confirm the Arbitration Award, granting a judgment against R.C. and the other Shama Parties, jointly and severally, for sums in excess of $2,000,000.00. This judgment was

6

granted against R.C. and the other Shama Parties on October 1, 2018. [1:22-cv-02651-SCJ Doc. 1-2, at 14; 1:16-bk-65074-LRC Doc. 398, at 14].

Despite full knowledge that R.C. was in bankruptcy, that the automatic stay was in effect, and that the Arbitration Award named R.C. as jointly and severally liable, at no time in the legal processes described above did Appellees file any Motion for Relief from Stay in R.C.'s bankruptcy case. When asked at trial on R.C.'s Motion to Enforce the Stay why no Stay Relief Motion was ever filed, Respondents asserted the attorney-client privilege. Indeed, Appellees' response brief to R.C.'s Motion to Enforce Stay, filed November 3, 2017, does not request the Bankruptcy Court annul the stay for cause. Appellees' motion for summary judgment, filed on December 21, 2018, does not mention annulment of the stay. Nor does Appellees' reply to R.C.'s motion for summary judgment, filed on April 17, 2019. [1:22-cv-02651-SO Doc. 1-2, at 23; 1:16-bk-65074-LRC Doc. 398, at 23].

Indeed, only after the Bankruptcy Court denied Appellees' motion for summary judgment and find a stay violation occurred, on August 19, 2019, did Appellees realize they needed to come up with an entirely new strategy to excuse their willful behavior. Thus, on January 10, 2020, two and a half years after the stay was first violated, Appellees' trial brief makes the first mention of annulling the stay for cause. This gambit was further supported almost a year after that by Appellees' attempt to introduce a cavalcade of documents in the Gujarati language which

Appellees insisted demonstrated bad acts by R.C. which gave cause for annulment. Before these documents could be authenticated, let alone admitted, but after focusing multiple days of testimony on these documents, Appellees' withdrew their motion to reopen evidence.

### C. Disposition of District Court Appeal

The Bankruptcy Court entered its final order granting Appellee's request to annul the automatic stay on June 23, 2022. [Doc. 1-4 at 1-2]. Appellant filed a notice of appeal on July 1, 2022, and the appeal was docketed by the District Court for the Northern District of Georgia July 5, 2022. [1 :22-cv-02651-SCJ Doc. 1]. Briefs were filed by both parties, and no oral argument was held.

On August 4, 2023, the District Court entered its order finding, in relevant part, "no reversible error under the applicable standards in the procedural, factual, and merits ruling of the Bankruptcy Court." [Doc. 1-4 at 18]. In particular, the District Court made note of "a split of persuasive authority" on the issue of *nunc pro tunc* annulment of the automatic stay, ultimately finding "no error in the Bankruptcy Court's analysis and adoption of the holding in Merriman as it is the better reasoned line of authority." [Doc. 1-4 at 11-17] (analyzing the distinctions in approach to the issue between Merriman v. Fattorini (In re Merriman), 616 B.R. 381 (B.A.P. 9th Cir. 2020) and In re Telles, 2020 Bankr. LEXIS 1167 (Bankr. E.D.N.Y. Apr. 30, 2020)).

8

For the above-stated reasons, the District Court affirmed the Bankruptcy Court's order.

## STANDARD OF REVIEW

United States District Courts have jurisdiction to hear appeals "from final judgments, orders, and decrees . . of bankruptcy judges." 28 U.S.C. § 158(a)(1). Once a District Court has taken up an appeal, the United States Circuit Courts of Appeals "shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered" in that capacity. 28 U.S.C. § 158(d)(1). "Whether made by the bankruptcy or district court, [the Eleventh Circuit Court of Appeals] review[s] determinations of law de novo." Davis v. Shepard (In re Strickland & Davis Int", Inc.), 612 F. App'x 971,974 (11th Cir. 2015) (citing In re Williams, 216 F. 3d 1295, 1296 (11th Cir. 2000)).

## SUMMARY OF THE ARGUMENT

Appellees consistently, knowingly, and willfully violated the automatic stay by obtaining, then taking to state court to obtain judgment on, an arbitration award that found Appellant jointly and severally liable for millions of dollars. Because the automatic stay was in place, none of these actions had the necessary jurisdictional requirements to have legal effect; they were void ab initio. Moreover, Appellees did not take any timely actions to correct these mistakes. They did not ask for stay relief Only after the Bankruptcy Court ruled against their motion for

9

summary judgment and, in so doing, determined they had committed a stay violation did they try a completely new tactic. In an attempt to rewrite the history of their actions, Appellees suddenly began asking on the eve of trial that the Bankruptcy Court "annul" the automatic stay for cause under 11 U.S.C § 362 (d)(1). Because this request requires the Court to create a legal fiction through *nuns pm tune* order that Appellees' belated request retroactively granted the arbitrator and state court jurisdictional authority they did not previously have, the annulment runs afoul of recent Supreme Court precedent.

## ARGUMENT

A. <u>The Automatic Stay Is An Essential Protection Of Both Debtors And Their Creditors That Appellees Procedurally Abused By Seeking Its Annulment "For Cause" Only After The Bankruptcy Court Ruled They Had Violated It.</u>

"The automatic stay is considered `one of the fundamental debtor protections provided by the bankruptcy laws,'" and one of its primary purposes is to provide the debtor "breathing room" upon filing a bankruptcy petition. <u>In re Chintella,</u> 2014 Bankr. LEXIS 3128, 2014 WL 3672882, at *3 (Bankr. N.D. Ga. June 20, 2014). The automatic stay does not exist solely for the protection of the debtor; it also "performs the important function of `protect[ing] creditors by avoiding the p iece-meal or distressed liquidation of the debtor's assets and a race to the courthouse, thus furthering administration of assets in an orderly fashion to achieve an equitable distribution within the framework of the Bankruptcy Code.'"

Litton Loan Servicing, LP v. Rockdale Cty. (In re Howard), 391 B.R. 511, 515 (Bankr. N.D. Ga. 2008). To that end, the automatic stay prevents the continuation of judicial proceedings, including an arbitration, regarding claims that arose prior to the bankruptcy against a debtor and the entry of an arbitration award against the debtor, as well as any attempt to collect a p repetition debt. 11 U.S.C. § 362(a)(1); § 362(a)(6); see also Acands, Inc. v. Travelers Cas. & Sur. Co., 435 F. 3d 252, 259 (3d Cir. 2006); In re Kaiser Aluminum Corp., 303 B.R. 299, 303 (D. Del. 2003) (holding that the filing of a motion to compel arbitration violated § 362(a)(1)). Actions taken in violation of the stay, including judicial actions, are generally void ab initio in the Eleventh Circuit. In re Albany Partners, Ltd., 749 F. 2d 670, 675 (11th Cir. 1984).

Before the extraordinary steps of removing the automatic stay can be taken, 11 U.S.C. § 362(d) requires a party in interest to abide by the notice and hearing guidelines required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. "A motion for relief from an automatic stay provided by the Code . . . shall be made in accordance with Rule 9014." Fed. R. Bankr. P. 4001(a)(1). According to Fed. R. Bankr. P. 9014, "relief shall be requested by motion".

Appellees ' actions showed consistent and flagrant disregard for the sanctity of the automatic stay and flouted the notice and hearing requirements imposed by the Federal Rules. Despite actual knowledge of Appellant's bankruptcy, and thus

11

that the stay was in p lace, Appellees engaged in an arbitration award that named Appellant as jointly and severally liable for millions of dollars. This award against a debtor in bankruptcy did not give Appellees pause. Nor did Appellant's immediate motion to enforce the stay. Despite knowledge the stay was in effect and Appellant was actively seeking to enforce that stay, Appellees went directly to the DeKalb County courthouse to have a judgment issued against Appellant.

Even then, Appellees did not request relief from the stay. First they waited. Eventually, they claimed an annulment should be issued because their actions did not actually violate the automatic stay. Only years after the fact, once the bankruptcy court ruled their actions to effectuate a judgment of millions of dollars against the Appellant did in fact violate the stay, did Appellees first float the idea that annulment was appropriate by way of cause. These repeated actions taken in violation of the automatic stay run afoul of the protections the Bankruptcy Code puts in place for the benefit of debtor and, as important or more so, the debtor's creditors.

By failing to offer such a request to the full notice and hearing requirements of the **Bankruptcy** Code and Rules, Appellees avoided offering the question of stay relief to all affected parties: namely, the creditors of the debtor, who are also protected by the automatic stay. See Litton Loan Servicing, LP v. Rockdale Cty. (In re Howard), 391 B.R. 511, 515 (Bankr. N.D. Ga. 2008). Furthermore, as will be

discussed below, this belated annulment is only able to occur by retroactively granting jurisdiction to courts that never had such jurisdiction in actuality.

B.  Appellees' Belated Request For Annulment For Cause Required The Bankruptcy Court To Effectively Rewrite The Procedural History Of Appellant's Bankruptcy Case To Retroactively Grant Jurisdiction to Courts and Proceedings They Never Had, Thus Requiring The Bankruptcy Court To Enter An Impermissible *Nunc Pro Tunc* Order.

The United State Supreme Court recently held that "[f]ederal courts may issue *nunc pro tunc* orders .. . to reflect the reality of what has already occurred . . . Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court." Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano, 140 S. Ct. 696, 700-01(2020) (citing Missouri v. Jenkins, 495 U. S. 33, 49, 110 S. Ct. 1651, 109 L. Ed. 2d 31 (1990); Cuebas v Arredondo v. Cuebas y Arredondo, 223 U. S. 376, 390, 32 S. Ct. 277, 56 L. Ed. 476 (1912)) (internal citations omitted). This inadvertence is essential, as "[s]uch a decree *presupposes a decree allowed,* or *ordered,* but not entered, through *inadvertence* of the court." Acevedo, 140 S. Ct. at 701 (emphasis added). To use a *nunc pro tunc* order to effectively change the history of a case to add a court order where none existed previously would be tantamount to an "Orwellian vehicle for revisionist history— creating `facts' that never occurred in fact." Id.

As this Court has explained, this is because the purpose of *nunc pro tunc* orders "is to correct mistakes or omissions in the record so that the record properly

reflects the events that *actually took place.*" <u>Rohe v. Wells Fargo Bank, N.A.,</u> 988 F. 3d 1256,1261 n.6 (11th Cir. 2021) (quoting <u>Stansell v. Revolutionary Armed Forces of Columbia,</u> 771 F. 3d 713, 747 (11th Cir. 2014); <u>Glynne v. Wilmed Healthcare,</u> 699 F. 3d 380, 383-84 (4th Cir. 2012)) (emphasis in original). If no such decree, order, or allowance was inadvertently omitted previously, "the court 'cannot make the record what it is not.'" <u>Acevedo,</u> 140 S. Ct. at 701 (citing *Jenkins,* 495 U. S., at 49).

The issue in <u>Acevedo</u> concerned orders issued by a state court that lacked jurisdiction at the time of their issuance. Because the state court did not have jurisdiction over the case, its orders were deemed void. The Supreme Court held that *nunc pro tunc* relief could not cure the jurisdictional defect and therefore the state court orders were void and of no force and effect. While the question of whether *nunc pro tunc* orders may be issued to retroactively annul the automatic stay has not been addressed in light of the Supreme Court's ruling in <u>Acevedo</u> by the Eleventh Circuit Court of Appeals, other courts have found that *nunc pro tunc* stay annulments which in effect re-grant jurisdiction to state court decisions previously voided by the automatic stay to be similarly impermissible.

<u>In re Telles,</u> 2020 Bankr. LEXIS 1167 (Bankr. E.D.N.Y. Apr. 30, 2020), applies the <u>Acevedo</u> decision's *nunc pro tunc* standard in a way that most respects the vital role of the automatic stay in bankruptcy. <u>Telles</u> concerned an entity which

purchased via a state foreclosure sale the property of the bankruptcy debtor. Because the sale occurred two days after the filing of the debtor's bankruptcy p etition, the automatic stay was in effect at the time of the state foreclosure action. This meant the state foreclosure action never actually had the requisite jurisdiction over the debtor's property. The automatic stay's divestment of state court authority was so powerful that the bankruptcy could not annul it, even though the purchaser acted in good faith and was unaware of the bankruptcy filing, because to do so would require an impermissible rewriting of history to reinstate state court power through *nunc pro tunc* order.

Unlike in Telles, Appellees knew full well the automatic stay was in effect with regard to Appellant. They acted with flagrant disregard for the automatic stay, instead bringing their arbitration award against Appellant personally to the Dekalb County court over a year after Appellant's bankruptcy petition and months after his motion to enforce the automatic stay. Even then, they waited two years to even attempt to annul Appellant's stay for cause. Most importantly, however, because the automatic stay was in effect before either the arbitration or the state court's issuance of a judgment based on the arbitration award, neither proceeding had jurisdiction over Appellant. As such, they were necessarily void ab initio. See In re Albany Partners, Ltd., 749 F.2d at 675. The only method by which that

jurisdiction, *which never existed in fact,* could be instated for the first time would be to rewrite the history of Appellees' proceedings against Appellant.

In the present case, the Bankruptcy Court relied upon a line of cases stemming from a bankruptcy appellate panel opinion within the Ninth Circuit which carved from Acevedo a bankruptcy court's ability to annul the stay on the basis of the grant of authority to retroactively annul the stay codified in 11 U. S.C. § 362(d). See Merriman v. Fattorini (In re Merriman), 616 B.R. 381, 391-95 (B.A.P. 9th Cir. 2020). However, even within this line of cases, "the analysis as to whether the applicable court can issue a *nunc pro tunc* order is nuanced, and is dependent upon the facts and law concerning the particular relief being sought." Laurel Valley Dev., LLC v. Parker On re Parker), 624 B.R. 222, 236 n. 11 (Bankr. W.D. Pa. 2021). See also **In** re Sorelle, 2020 Bankr. LEXIS 3612, at *16 n. 24 (Bankr. D. Nev. Dec. 28, 2020) (holding an annulment could not be granted on a *nunc pro* tunc basis given the lack of proper request by defendants and the specific facts of the case).

Although the Merriman case's holding is written in direct contradiction of the holding of Telles,' the facts of Merriman demonstrate the potential for a more nuanced reconciliation of the two precedents. Merriman concerned a state court lawsuit filed unknowingly against a debtor after his bankruptcy filing and the

---

See Merriman, 6 I 6 B.R. at 391-94 (arguing against the reasoning of Telles).

imposition of the automatic stay. Once the plaintiffs learned of bankruptcy case, they filed a motion for relief from the stay and, although the trial had not yet commenced, sought an annulment of the stay so as to avoid expiration of applicable statutes of limitations. The bankruptcy court ruled that because the plaintiffs did not have notice of the bankruptcy case before they filed their action, because their issues needed to be litigated to reach a liquidated claim amount in the bankruptcy case, and that the state court was the most efficient p lace to litigate that claim. The bankruptcy appellate panel in turn found that "[w]here the stay enjoins pursuit of litigation o f a claim, such as the case before us, granting relief from stay raises even fewer jurisdictional concerns [than those in Telles" because while "district courts have original and exclusive jurisdiction over bankruptcy cases, 28 U.S.C. § 1334(a), they have original but not exclusive jurisdiction over all civil proceedings airing in or arising under or related to a bankruptcy case, 28 U. S. C. § 1334(b)" and "Congress clearly contemplated that in certain circumstances, other courts would hear and determine proceedings arising in or related to a bankruptcy case." Merriman, 616 B.R. at 394. Thus, the Merriman holding allows good faith potential claimants to ask permission of the bankruptcy court to litigate claim amounts in other venues.

Those facts do not apply to Appellees. Appellees knew of Appellant's bankruptcy long before the arbitration proceeding. Not only did they know of

Appellant's bankruptcy before they went to state court to enforce the award against Appellant, they knew Appellant was actively seeking to enforce the stay in the bankruptcy court. Appellees were not seeking to liquidate a claim amount against Appellant and did not ask permission to do so. Indeed, they only began to pay lip - service to the idea of stay annulment after the bankruptcy court ruled a knowing violation had occurred. In each instance, the operative facts of <u>Merriman</u> run contrary to Appellees' actions.

In the present case, Appellees used reference to the bankruptcy court's power to annul the stay as window dressing to hide the fact that they never properly invoked that power through appropriate pleadings. Because Appellees failed to appropriately seek a relief from the stay, and instead asked the bankruptcy court to cover over their transgressions by retroactively giving jurisdiction to actions that previously had none, the bankruptcy court's annulment of the stay is necessarily "revisionist history" of the sort the Supreme Court has ruled improper. See <u>Acevedo,</u> 140 S. Ct. at 701.

Because the automatic stay was in place before the arbitration occurred and before Appellees went to state court to enforce the arbitration award, neither the arbitrator nor the state court ever properly had jurisdiction to take action against Appellant. As Appellees never properly invoked 11 U.S.C. § 362(d), at best, the

"annulment" sought by Appellees was a *nunc pro tunc* order pursuant to the inherent powers of a trial court to rewrite the history of the case to provide that jurisdiction.

The only way for Appellees to avoid the jurisdictional problem is to pretend the stay was never *actually* violated because the Bankruptcy Court would later annul the stay, meaning it was not in place when the stay violations occurred. In other words, "revisionist history—creating `facts' that never occurred in fact." Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano, 140 S. Ct. 696, 701 (2020).

## VII. CONCLUSION

The automatic stay exists in bankruptcy to protect not just the debtor, but a debtor's creditors as well. Appellees, in both arbitration hearings and state court proceedings, actively sought a judgment of millions of dollars against Appellant in flagrant violation of the automatic stay. Within the Eleventh Circuit, such violations are void ab initio to ensure the proper protection granted by the automatic stay remains in effect. Thus, the state court in which Appellees sought to confirm their award never had the requisite jurisdiction to enter one. After years of not seeking relief from the stay, and only after the bankruptcy court ruled Appellees had violated same by their actions, Appellees began arguing their violations were justified because the stay should be annulled for cause. By granting this belated request, the bankruptcy court retroactively granted jurisdiction to the

arbiter and state court where jurisdiction had previously never existed. This is exactly the sort of impermissible *121111c p 11) tunc* order the United States Supreme Court has ruled impermissible.

Respectfully submitted, this 25ᵀᴴ day of October, 2023.

MACEY, WILENSKY & HENNINGS, LLP

By:
/s/ _____

Frank B. Wilensky
Georgia Bar No. 758700

*Attorneys for Appellant*

5500 Interstate North Parkway
Suite 435
Atlanta, GA 30328
(404) 584-1234 — Telephone
(404) 681-4355 — Facsimile
fwilensky@maceywilensky.com

20

# VIII. CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of [[[Fed. R. Bankr. P. 8015(a)(7)(B) and LR 5.1]]]], as this document contains ___5,244___ words and consists of ___28___ pages. This document complies with the typeface requirements of [[[[[[[[[[[[[[[[Fed. R. Bankr. P. 8015(a)(5)]]1]1]1]1]]] and the type-style requirements of [[[[[[[[[[[Fed. R. Bankr. P. 8015(a)(6), as well as LR 5.1,]]]]]]]]]]]] because it has been prepared in a proportionally spaced typeface on a computer using 14-point and Times New Roman.

This _25TH_ day of October, 2023.

By:
/s/ _____
  Frank B. Wilensky
  Georgia Bar No. 758700

  *Attorneys for Appellant*

5500 Interstate North Parkway
Suite 435
Atlanta, GA 30328
(404) 584-1234 — Telephone
(404) 681-4355 — Facsimile
fwilensky@maceywilensky.com

21

# VIII. CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing BRIEF OF APPELLANT with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorney of record:

Michael **D.** Robl
Robl Law Group LLC
Suite 250
3754 LaVista Road
Tucker, GA 30084

This 25ᵀᴴ day of October, 2023.

By:_____
/s/

Frank B. Wilensky
Georgia Bar No. 758700

*Attorneys for Appellant*

5500 Interstate North Parkway
Suite 435
Atlanta, GA 30328
(404) 584-1234 — Telephone
(404) 681-4355 — Facsimile
fwilensky@maceywilensky.com